# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY BURNETT, # B-14533, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 17-cv-650-NJR |
| ) | |
| WARDEN OF ROBINSON ) | |
| CORRECTIONAL ) | |
| CENTER, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On July 11, 2013, Petitioner Terry Burnett pled guilty to two offenses in Peoria County: unlawfully acquiring a controlled substance (Case No. 11-CF-961) and burglary (Case No. 12-CF-113). The verbal plea agreement provided for an aggregate 9-year sentence, to be followed by 3 years of mandatory supervised release. (Doc. 1, pp. 17-20). The sentence included 2-1/2 years on the drug offense, to be followed by 6-1/2 years for burglary, which was mandated to be served consecutively. (Doc. 1, p. 18). Burnett was to receive credit for time spent in pretrial detention, including a 412-day period when he was being held on the two pending charges simultaneously. (Doc. 1, pp. 19, 27-28, 55; Doc. 7, p. 2). His disagreement with the amount of sentence credit awarded prompted this Habeas Petition, filed pursuant to 28 U.S.C. § 2254.

Burnett claims that he was denied the benefit of his plea bargain because he should have received pretrial credit for the 412 days against each of his consecutive sentences separately, which would amount to two days of credit for each of those days spent in pretrial custody. Respondent

1

has answered, arguing that the Petition is time-barred as to the judgment in the 2011 drug case, and that the claim for double credit lacks merit. (Doc. 7). Burnett has replied. (Doc. 14).

**RELEVANT FACTS AND PROCEDURAL HISTORY**

Burnett represented himself in the plea discussions, after having discharged his public defender. (Doc. 1, p. 16-26). Burnett agreed to a 9-year sentence "because that would put me at doing 39 months instead of 45 months because I'm not going to get no good time[.]" (Doc. 1, p. 17; see also Doc. 14, p. 1). The prosecutor explained to the court that Burnett would get 6-1/2 years on the burglary count, mandatorily consecutive to the 2-1/2 years for the drug count; three other counts would be dismissed. "He does receive credit for time previously served on each of the cases, and those dates are outlined in the orders, which I did provide to the defendant and explain to him those days." (Doc. 1, p. 18-19). After accepting the plea and imposing the agreed-upon sentence, the court reiterated, "Those sentences will run consecutively. You'll get credit for time served." (Doc. 1, p. 24). The judgment in the burglary case specified the dates for which Burnett would receive credit as February 2 to March 14, 2012, and June 8, 2012 through his transport to the Illinois Department of Corrections ("IDOC") after the July 11, 2013 date of judgment. (Doc. 1, p. 27). Similarly, the drug case judgment provided for credit from October 9 to November 1, 2011, and from June 8, 2012 through transport to IDOC. (Doc. 1, 28).

Burnett was transported to IDOC on July 25, 2013. (Doc. 7, p. 2). In light of the dates outlined in the two judgments, Burnett claims he should have been given credit for 435 pretrial custody days on the drug sentence (11-CF-961) and 454 days on the burglary sentence (12-CF-113). (Doc. 1, p. 55). Burnett and Respondent agree that 412 of the pretrial custody days represented the simultaneous custody period from June 8, 2012 to July 25, 2013. (Doc. 1, p. 55; Doc. 7, p. 2). While Burnett maintains he should get a separate 412 days' credit against each

2

individual sentence, the IDOC credited these 412 days only once against Burnett's aggregate sentence of 9 years.

Burnett did not appeal from the judgment in either case. He did, however, file two petitions for state post-conviction relief. (Doc. 7, p. 2). His first post-conviction petition, filed July 11, 2014,[1] challenged only the burglary conviction and did not raise the matter of sentence credit. (Doc. 8-1, pp. 1-11). It was dismissed by the trial court. (Doc. 8-1, p. 13). On appeal from that dismissal, Burnett challenged the assessment of fines, some of which were vacated by the appellate court. (Doc. 8-2). Rehearing was denied on February 3, 2017, and Burnett did not seek review by the Illinois Supreme Court. (Doc. 8-2, p. 1; Doc. 7, p. 2).

Burnett filed the second state post-conviction petition on October 7, 2015,[2] this time raising the benefit-of-the-bargain challenge to both judgments. (Doc. 15-1, pp. 26, 36-38). After a hearing, the trial court granted the state's motion to dismiss the petition on May 21, 2016. (Doc. 1, pp. 34-43, 45). Burnett appealed, and the matter was still pending before the Illinois Appellate Court, Third District (Nos. 3-16-0317, 3-16-0318, 3-16-0319),[3] at the time he filed the instant habeas Petition. (Doc. 1, pp. 2, 48, 50, 52, 54). Neither party has notified the Court of any resolution to the consolidated appeals, and the Court was unable to locate an order disposing of the matter.

According to Burnett's own calculation, his release date from the 9-year sentence should have been August 16, 2015, if he had been given the sentence credit he believed he was due.

---

[1] Burnett's certificate of mailing demonstrates that he submitted the post-conviction petition to prison officials for filing on July 11, 2014 (Doc. 8-1, p. 10). Under the "mailbox rule," it is considered filed as of that date. *See Houston v. Lack*, 487 U.S. 266 (1988); *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001).

[2] October 7, 2015, is the date Burnett submitted the post-conviction petition for filing (Doc. 15-1, p. 31); it was file-stamped by the Circuit Court on October 19, 2015.

[3] Burnett was assigned a distinct appeal number for each of his circuit court cases: No. 3-16-0317 for Circuit Court No. 11-CF-961 (drug case); No. 3-16-0318 for No. 12-CF-113 (burglary case); and No. 3-16-0319 for No. 12-CF-509, a burglary case that was dismissed as part of the plea bargain. (Doc. 1, pp. 1, 48, 50, 52).

(Doc. 1, p. 55). However, he notes that he "spent [his] parole time in prison," *Id.*, because he was "violated at the door because of past convictions." (Doc. 28, p. 1). Even so, he claims that he should have completed his mandatory supervised release time by February 16, 2017. (Doc. 1, p. 55). In his Reply, filed on July 12, 2017, Burnett stated that his release date had been set for April 5, 2018. (Doc. 14, p. 4).

As of the date of this Order, Burnett remains incarcerated on unrelated convictions.[4]

### APPLICABLE LEGAL STANDARDS

**1.      Substantive Law**

This Habeas Petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an

---

[4] According to the inmate search page of the IDOC website, Burnett's sentences for Peoria Case Nos. 11-CF-961 and 12-CF-113 have been discharged, but he is still serving 4-year sentences on Tazewell Case Nos. 18-CF-242 and 18-CF-402. Https://www2.illinois.gov/idoc/Offender/ Pages/InmateSearch.aspx (last visited Oct. 21, 2019).

"unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal citations omitted).

**2.      Timeliness, Exhaustion and Procedural Default**

28 U.S.C. § 2244 creates a one-year limitation period for filing a petition for writ of habeas

5

corpus. Under 28 U.S.C. § 2244(d)(1), a person convicted in state court must file his federal habeas petition within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The one-year statute of limitations is tolled during the pendency of a "properly filed" state post-conviction petition. 28 U.S.C. § 2244(d)(2). The one-year statute of limitations is also "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling applies only where the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); see also 28 U.S.C. § 2254(c). Under the Illinois two-tiered

appeals process, petitioners such as Burnett must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.*

## ANALYSIS

**1.     Timeliness of Habeas Petition**

Respondent argues that Burnett's Petition is untimely as to the drug case (11-CF-961), but did not raise a timeliness objection relating to the burglary case. (Doc. 7, pp. 3-4). Burnett says that he "only found out [he] was not getting the benefit of [his] bargain with [the] State's Attorney when [he] file[d] [his] post conviction," referring to the petition filed in October 2015 which is still pending before the Illinois Appellate Court. (Doc. 1, p. 13).

The judgment in No. 11-CF-961 (as well as in No. 12-CF-113) became final on August 12, 2013, thirty days after its July 11, 2013 date. *See* Ill. Sup. Ct. R. 604(d); (Doc. 7, p. 3). Thereafter, Burnett had one year (until August 12, 2014) to file for federal habeas corpus relief. 28 U.S.C. § 2244(d)(1)(A). As Respondent points out, Burnett never sought post-conviction relief on the drug conviction before August 12, 2014. His July 2014 post-conviction petition challenged only the burglary conviction, so it did not serve to toll the federal habeas filing deadline for the drug sentence. Thus, the March 2017 Habeas Petition is over two years too late as it relates to the drug sentence.

As to the burglary case (12-CF-113), Burnett's July 11, 2014 post-conviction petition tolled the one-year deadline. 28 U.S.C. § 2244(d)(2). At that point, he had 33 days remaining on his filing deadline (counting from when the clock stopped on July 11, 2014, to the original expiration date of August 12, 2014). The appeal of that post-conviction matter ended on February 3, 2017, when the appellate court's decision was issued, because Burnett did not seek further review. *See*

*Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (tolling under Section 2244(d)(2) ends when the state court's post-conviction review is complete and no longer "pending"). However, Burnett's second post-conviction petition of October 2015 continued the tolling of Burnett's federal habeas filing deadline as to the burglary conviction pursuant to 28 U.S.C. § 2244(d)(2). Only a "properly filed" petition will suspend the habeas filing deadline, 28 U.S.C. § 2244(d)(2), and a state prisoner may only file a second or successive post-conviction petition if leave of court is given. 725 ILCS § 5/122-1(f). On February 10, 2016, the circuit court ordered further proceedings on Burnett's post-conviction petition, appointed the public defender, and set a briefing schedule. (Doc. 15-1, p. 85). This demonstrates that the October 2015 petition was "properly filed" and continued to toll Burnett's deadline to seek federal habeas relief as to his burglary conviction and sentence.

**2.     Exhaustion**

Burnett did not exhaust his benefit-of-the-bargain claim through all levels of the Illinois state courts before filing this action, as his appeal of the October 2015 post-conviction petition was still pending when he initiated this case. Furthermore, it appears that the Illinois Appellate Court, Third District, has still not issued a ruling in Burnett's appeal. Nonetheless, citing 28 U.S.C. § 2254(b)(2), Respondent correctly points out that this Court may deny the Petition on the merits despite Burnett's failure to exhaust the claim. Neither party has requested this Court to stay the case pending a decision by the appellate court.

**3.     Merits of Burnett's Benefit-of-the-Bargain Claim**

In order to prevail on this claim, Burnett must demonstrate that the state court's disposition of his post-conviction petition was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

8

proceeding." 28 U.S.C. § 2254(d). Furthermore, the state court's factual findings are presumed to be correct, unless the habeas petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A habeas court reviews, subject to AEDPA deference, the state court's "last reasoned opinion on the claim" raised in the habeas petition. *Kimbrough v. Neal*, - F.3d -, 2019 WL 5445310 at *2 (7th Cir Oct. 24, 2019) (citing *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012)); *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). In this case, that is the circuit court's order granting the state's motion to dismiss Burnett's October 2015 post-conviction petition. (Doc. 1, p. 45).

A claim that a criminal defendant did not receive the benefit of the bargain made in his guilty plea has its constitutional roots in the Supreme Court's holding in *Santobello v. New York,* 404 U.S. 257, 262 (1971). *Santobello* states that under the due process clause, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.*; *see also People v. Clark*, 956 N.E.2d 1078, 1079 (Ill. App. 2011) (reducing sentence so that defendant would receive the agreed "double" pretrial custody credit against his consecutive sentences according to the plea terms as stated in open court).

In Burnett's case, the state circuit court rejected his claim that because he was in pretrial custody on both the drug and burglary cases at the same time, he was entitled to sentence credit against each consecutive sentence – which would amount to double the number of days he actually served in pretrial custody. (Doc. 1, p. 45). Under Illinois law, a defendant is ordinarily entitled to only one day of sentence credit for each day spent in pretrial custody. *People v. Latona*, 703 N.E.2d 901, 907 (Ill. 1998). An exception to this rule exists when a specified amount of sentence credit is clearly set forth as part of the plea agreement in open court. *People v. McDermott*, 12 N.E.3d 148

9

(Ill. App. 2014) (finding that defendant was entitled to credit against each of two distinct sentences for the same days in custody, based on the record showing that such credit was specifically bargained-for in each case).

At the hearing on his post-conviction petition, Burnett testified about the plea negotiations:

> [W]e was [sic] arguing back and forth over between nine years and 10 years. And see, the whole time I was told that I would receive credit for time served on both cases. So that – that wasn't even part of even the negotiation after the fact, because she [the prosecutor] said that that's what I would receive on both cases. And she even stipulated it in the plea agreement.

(Doc. 1, p. 38). The court then questioned Burnett's attorney: "Meaning you agree that that was not a bargained-for term and you should have said opposite of that to qualify under McDermott; right, Mr. Snyder?" (Doc. 1, pp. 38-39), and continued:

> THE COURT: He's not claiming what McDermott says he has to claim to prevail. He's saying, No, it was not a bargained-for term. And I kind of a little bit side with him on that misunderstanding, but that's not McDermott. You didn't understand it. Maybe we didn't explain it well or you didn't understand it. Well, whoever's fault it is, that's not the McDermott holding.

(Doc. 1, p. 39).

Burnett's counsel did not concede the point and instead maintained that the petition had a good-faith basis. The court continued, "I can see how he thought that. I agree with you a hundred percent that that's a normal thing to think. The question is, does the law allow me to give you what you want?" (Doc. 1, p. 40). Burnett explained again:

> [T]he negotiation was already taken care of as far as the days that I would receive. The second part of the negotiation was the amount of time. She was wanting to give me 10 years and I was wanting to take eight. . . . [W]hen I come [sic] into court I told her I would take the nine and she agreed . . . but the days had already been discussed and that was part of the agreement to even get me to consider pleading to the burglary charge . . . . [S]he basically already told me she would give me those days on both cases.

(Doc. 1, p. 40). The court took the matter under advisement.

10

The circuit court's written ruling found that the exception described in *McDermott* was "inapplicable, in that this was not an essential bargained-for term." (Doc. 1, p. 45). The court continued, "Defendant failed to show that he is not receiving the benefit of the bargain for his guilty plea." *Id.*

The circuit court made a factual finding that the "essential bargained-for term[s]" of Burnett's plea agreement did not include a provision that he would receive 435 days of credit against his drug sentence and another 454 days' credit against his consecutive burglary sentence. Such a factual finding by the state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). This presumption can only be overcome if the habeas petitioner produces clear and convincing evidence to the contrary. *Id.* Burnett has not done so here.

Burnett points to his statement that he would agree to the 9-year sentence because that would mean he would serve "39 months instead of 45 months at 10 years."[5] (Doc. 14, p. 1; Doc. 1, p. 17). He references the transcript of the plea/sentencing hearing where the prosecutor outlined the agreement for the 9-year sentence, stating, "He does receive credit for time previously served on each of the cases, and those dates are outlined in the orders[.]" (Doc. 14, p. 2; Doc. 1, p. 19). The court adopted the plea agreement, stating that Burnett's sentences "will run consecutively. You'll get credit for time served." (Doc. 1, p. 24; Doc. 14, p. 2). Burnett argues that the court "agreed to give me what the State's Attorney Jodi Hoos said she would give me and explained to me." (Doc. 14, p. 2). He claims that the prosecutor promised him that he would get credit for his pretrial custody as he outlines, 435 days against the 2-1/2 year sentence and 454 days against the 6-1/2 year term. But this purported agreement was never stated explicitly in open court, and indeed Burnett testified at the post-conviction hearing that "the days had already been discussed," before

---

[5] Burnett never explains how he arrived at the 39-month calculation, nor was there any elaboration in the record.

the plea was outlined to the court. In any event, the statements that he would "receive credit for time previously served on each of the cases" and he would "get credit for time served" are too ambiguous to support Burnett's claimed understanding of the plea terms.

The case Burnett cites in support of his claim, *People v. McDermott*, is distinguishable, as the circuit court found. In *McDermott*, the defendant was sentenced for several offenses in different counties, with some sentences consecutive and others concurrent. The record relating to the Champaign County case included the prosecutor's statement of the terms of the plea agreement in open court, specifying the defendant would receive 222 days' sentence credit against a 5-year term; and in McLean County, the written plea agreement was recited in open court, stating the defendant would receive credit for 233 days served against another 5-year sentence. *McDermott*, 12 N.E.3d 148, 150-51 (Ill. App. 2014). The Illinois Appellate Court found that this record reflected that McDermott failed to receive the benefit of his bargain when the IDOC refused to give him the credits as specified. *McDermott*, 12 N.E.3d at 153-54.

In contrast to *McDermott*, neither Burnett, the prosecutor, nor the court ever stated on the record at the plea/sentencing hearing that Burnett would get credit of 435 days against the drug sentence and another 454 days against the consecutive burglary sentence. On this record, Burnett fails to overcome the presumption that the court's factual finding as to the terms of his plea agreement was correct. *See* 28 U.S.C. § 2254(e)(1). Furthermore, this Court cannot say that the circuit court's decision was based on an unreasonable determination of the facts in light of the evidence presented, or that the court's decision amounted to an unreasonable application of *Santobello* or was contrary to that precedent. *See* 28 U.S.C. § 2254(d).

For these reasons, Burnett is not entitled to habeas corpus relief. His Petition will be denied, and this action shall be dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, Burnett must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

Here, no reasonable jurist would find it debatable whether this Court's rulings were correct. Accordingly, the Court denies a certificate of appealability.

Burnett may reapply for a certificate of appealability to the United States Court of Appeals, Seventh Circuit. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1).

## CONCLUSION

Burnett's Petition for habeas corpus relief under 28 U.S.C. § 2254 (Doc. 1) is **DENIED**. This action is **DISMISSED with prejudice**. All pending motions are **DENIED as moot**. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

If Burnett wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Burnett plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Burnett does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d

724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED:  October 28, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**